539 So.2d 739 (1989)
STATE of Louisiana
v.
Joseph FREEMAN, Jr.
No. CR88-576.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Writ Denied May 19, 1989.
*740 David Stone, Alexandria, for Joseph Freeman Jr.
Thomas Yeager, Alexandria, for the State.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOMENGEAUX, Judge.
On October 22, 1987, Joseph Freeman, Jr., the appellant, was charged by a bill of information with simple burglary, a violation of La.R.S. 14:62. He was found guilty by a six person jury on January 13, 1988. Freeman was subsequently adjudicated a habitual offender and sentenced to serve fifteen years at hard labor. He now seeks review of his conviction based on nine assignments of error.
Assignments of error numbers 1, 3, 4, 6 and 7 have not been briefed and are, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
At approximately 6:00 a.m. on the morning of August 14, 1987, Linda Akins was awakened in her home on Thornton Street in Alexandria, La., by the sound of her dog barking from a backyard pen. Akins peered out of her bedroom window, but saw nothing suspicious. At about the same time, a private investigator jogging on Thornton Street observed an individual pushing an object on the opposite side of the street. The investigator was unable to identify the object in the pre-dawn darkness, but decided to follow the individual who turned onto Chester Street in the direction of Owl's Grocery. The investigator jogged past the individual and observed that the object being pushed was a lawnmower with a bicycle placed on top of it. The individual was then observed walking *741 to the porch of an unlit home and looking through the windows.
The jogger called a police emergency number from a pay telephone and suggested an officer be dispatched to investigate. He continued to follow the individual down a third street and observed the subject sitting between two parked cars with the lawnmower and bicycle still in his possession. The individual walked to yet another street as a police patrol car entered the area. The police officer was then informed by the investigator where to find the man with the lawnmower and bicycle.
Freeman was the person stopped by the officer and was asked to explain his actions. He told the officer he was cutting grass for a person named Crockett and that he was searching for boxes in which he could put grass cuttings. The officer was then told by Freeman that he had already delivered some boxes to the Crockett residence.
Freeman contended he found the bicycle and lawnmower in the trash behind Owl's Grocery Store while searching for the boxes. According to the appellant, a barbeque pit was also among the garbage. The investigating officers went to the grocery to verify the appellant's claim, but found neither boxes nor the barbeque pit.
Officers then canvassed the neighborhood to determine whether anyone was missing any property. When informed police were searching for the owner of a stolen bicycle and lawnmower, Ron Akins went to his yard and discovered his lawnmower and bicycle were missing. The property taken from the appellant was identified by the Akins as their property. The Akins testified that the bike was left in the yard and the lawnmower on the carport and that they were last seen the previous evening. The two testified that the appellant was not authorized to enter onto their carport or to take the lawnmower or bicycle.
Also testifying at trial was Crockett who acknowledged that the appellant had previously performed yard work at his home. Crockett, however, testified that Freeman had not been employed by him for three months prior to the incident. According to Crockett, the appellant never put grass cuttings in a box, but always used disposable plastic bags.
The owner of Owl's Grocery and his father also testified. They testified that they never noticed a bicycle or a lawnmower among the three garbage cans behind the grocery.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, the appellant contends that the Trial Court erred in denying his counsel's challenge for cause of a prospective juror who advised the Court that she had a hearing impairment. During voir dire, a prospective juror informed the Court she had "a slight hearing problem" caused by inner ear trouble which limited her hearing in her right ear. The juror stated she had trouble understanding some things said by the defense counsel during voir dire, but emphasized she had no trouble hearing the proceedings when all concerned spoke in a louder tone. Upon challenge for cause, the prosecutor opined that the hearing problem was present because the defense counsel was a long distance from the juror, that any problems in hearing the witnesses could be cured by seating the juror in the position closest to the witness stand and by allowing the juror to raise her hand and notify the Court if she experienced any hearing difficulty during the trial.
The Trial Judge examined the juror's level of hearing impairment by asking her three times with increasing volume if she was able to understand. The Judge, satisfied the juror was competent to serve, denied the challenge for cause.
A loss of hearing in and of itself will not disqualify a person from serving on a jury. A prospective juror may be challenged for cause, however, when there is a loss of hearing which satisfies the Court that the juror is incapable of performing her duties. La.Code Crim.Proc. art. 401(A)(4) and art. 401(B)(1).
Trial Judges are vested with broad discretion in determining whether a juror *742 suffering from a physical infirmity is competent to serve. A determination based on an examination by a judge that a juror's hearing is not so impaired as to make the juror incapable will not be disturbed absent an abuse of discretion. State v. Mills, 505 So.2d 933 (La.App. 2nd Cir.1987), writ denied, 508 So.2d 65 (La.1987); State v. Willis, 262 La. 636, 264 So.2d 590 (1972).
After listening to and questioning the prospective juror, the Trial Judge determined that the juror had the capacity to serve. As indicated by the prosecutor, the Court could take measures to insure that the juror heard the entire proceedings. For these reasons, the Trial Judge's denial of the defense counsel's challenge for cause was not an abuse of discretion.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
Freeman alleges in his fifth assignment of error that the Trial Judge erred in denying his request for a special jury instruction. He argues that the requested jury instruction would have insured that the jury could not find him guilty of burglary because of the mere unauthorized entry into a fenced yard.
Trial Judges are obligated to charge juries as to the law applicable to the case. When properly requested, a Judge must charge the jury as to any theory of defense which the jurors could reasonably infer from the evidence and which is supported by the evidence. La.Code Crim.Proc. art. 802; State v. Johnson, 438 So.2d 1091 (La. 1983); State v. Marse, 365 So.2d 1319 (La. 1978).
A special charge should be given by the Trial Judge if it does not require qualification, limitation or explanation, and if it is wholly pertinent and correct. La. Code Crim.Proc. art. 807; Johnson, supra; State v. Mead, 377 So.2d 79 (La.1979). It need not be given if it is included in the general charge or in another special charge. La.Code Crim.Proc. art. 807; State v. Pettaway, 450 So.2d 1345 (La.App. 2nd Cir.1984), writ denied, 456 So.2d 171 (La.1984); State v. Smith, 414 So.2d 1237 (La.1982). Failure to give a requested charge constitutes reversible error only if there is a miscarriage of justice, prejudice to substantial rights of the accused or a substantial violation of a constitutional or statutory right. Pettaway, supra; Marse, supra.
During trial both the State and the defense submitted special jury instructions to the Trial Judge. The prosecutor requested the Trial Judge to charge the jury as follows:
Simple burglary is defined as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein.
A "structure" has been defined to include a carport regardless if it is attached to the house or is an independent structure.
State v. Baggett, 292 So.2d 201 (La.1974) was cited as authority.
The defense counsel requested the following charge be read to the jury:
I further instruct you that an unauthorized entry into a fenced yard does not amount to an unauthorized entry of a "structure" for the purpose of the statute defining simple burglary.
The defense cited State v. Alexander, 353 So.2d 716 (La.1977), in support of its position.
After arguments, the Trial Judge decided to give neither requested instruction. Instead, the Judge read the definition of simple burglary, informed the jury that in order to find the appellant guilty they must find that he entered a "structure", read La.R.S. 14:3 addressing the interpretation of words within criminal statutes, and, lastly, read the definition of a structure as defined in Black's Law Dictionary. The Judge quoted Black's Law Dictionary as follows:
Structure is defined as any construction or any production or piece of work artificially built up or composed of parts joined together in some definite manner. Is also defined as that which is built or *743 constructed, an edifice or building of any kind, or a combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above or below the surface of a parcel of land.
Although the testimony adduced at trial established that the bicycle was not within a structure when it was stolen, it is apparent that the lawnmower was under the carport. Therefore, although the requested jury charge accurately stated case law, the authority cited by the defense was not entirely supported by the evidence which showed an entry onto the carport.
Additionally, the general charge sufficiently informed the jury that a "structure" must be entered into in order for a burglary to be committed. The jury was advised to determine the meaning of "structure" by interpreting the word in its usual sense as dictated by R.S. 14:3. The appellant's contention that the definition read from the legal dictionary allowed for a finding of guilt without a finding of entry into the carport is not supported by the record.
For these reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 8
The appellant contends in this assignment of error that the prosecutor failed to establish an essential element of the crime of simple burglary. In particular, Freeman maintains that the area from which the lawnmower was removed was not a "structure" as intended by statute. He argues that absent evidence of an entry into the home or the actual storeroom which was attached to the carport, there could be no conviction for burglary.
The prosecution introduced testimony at trial describing the scene of the crime. In the rear of the Akins' residence, apart from the house itself, there was a building described at trial as a storeroom, garage, utility room and workshop. The building stands at the end of a driveway running past the right side of the family residence. It consists of two rooms on the right and a large concrete carport. The entire construction is covered by a single roof. The carport is enclosed on the right by the rooms and at the rear by a wall. The left side is open, but contains three braces to support the roof. The front of the carport is open and the entire rear yard is fenced. The testimony at trial established that in order to steal the lawnmower, Freeman would have to have entered the carport.
In Baggett, the Court held that an unauthorized entry onto a "carport included within the frame and roof of the home and fenced to prevent entry, is a `structure', whether regarded as part of the home or instead an independent structure with a roof and two walls and entirely fenced against entry by the public." Baggett, supra at 203. In Baggett, two walls of the family home formed two walls of the carport. The front was fenced, but one side of the carport remained open to a fenced yard.
In the instant case, the premises entered was substantially similar to the structure in Baggett. The rear building on the property had two walls partially enclosing a carport. This building was covered by a single roof. Unlike Baggett, there was no fence spanning the periphery of the third side. However, the entire building was within the confines of the fenced yard.
R.S. 14:62 prohibits the unauthorized entry of any "dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein." It was the intent of the Legislature that structures other than simply family dwellings be included within the broad scope of the statute. Therefore, when there is an unauthorized entry into a carport under circumstances analogous to Baggett, there is a burglary within the meaning of R.S. 14:62. The carport in the instant case is a "structure", the invasion of which is proscribed by this statute.
For these reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 9
By this assignment of error, the appellant contends that a reversible error occurred when the prosecutor made comments during his opening statement addressing evidence which was not subsequently *744 introduced at trial. Freeman argues that reference to a flashlight discovered in the storeroom and the prosecutor's insinuation that his fingerprints were taken from the flashlight constitute reversible error because no evidence to that effect was introduced at trial. Freeman further argues that the prosecutor acted in bad faith because he knew no positive prints were taken from the flashlight and because no subpoena for the officer who seized the flashlight was issued. The appellant also alleges substantial prejudice because the statement represents the only time a perpetrator is placed within the storeroom as opposed to under the carport.[1]
The opening statement of the State should explain the nature of the charge and set forth, in general terms, the nature of the evidence by which the State expects to prove the charge. La.Code Crim.Proc. art. 766. The purpose of the statement is to acquaint the jury with the case and to inform the defendant of the nature of the evidence to prevent unfair surprise. State v. Kendig, 451 So.2d 124 (La.App. 3rd Cir.1984). The prosecutor's opening statement is not evidence and has no probative value. Absent prosecutorial bad faith or clear and substantial prejudice to the defendant, references during opening statements to evidence not subsequently admitted at trial is not grounds for a mistrial. State v. Green, 343 So.2d 149 (La.1977); State v. Maillian, 464 So.2d 1071 (La.App. 1st Cir.1985), writ denied, 469 So.2d 982 (La.1985); State v. Williams, 438 So.2d 1212 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 590 (La.1983).
Upon motion for mistrial, the prosecutor informed the Court that the State expected the officer referred to in the opening statement to appear voluntarily for trial. No subpoena was issued. The officer was out of the city on vacation on the date of trial and was unavailable to testify. The prosecutor acknowledged that the flashlight earlier referred to contained no identifying fingerprints. Except for the opening statement, no further reference was made at trial concerning the flashlight. Prior to deliberation, the Trial Judge instructed the jury that the contents of the opening statement were not to be considered as evidence.
It does not appear from the record that the prosecutor's reference to the flashlight and the possibility of fingerprints was made in bad faith. Furthermore, in light of the finding that the entry into the carport and the theft of the lawnmower constituted burglary, any reference to an entry into the storeroom did not prejudice the appellant in his defense. The reference did not, therefore, constitute reversible error. La.Code Crim.Proc. art. 921. The Trial Judge accurately emphasized to the jury that the prosecutor's comments during his opening statement did not constitute evidence. Instead of prejudicing the appellant, under the facts of the instant case, "it would be more logical and reasonable to conclude that the failure or inability of the State to elicit any evidence outlined in the opening statement redounds to the advantage and benefit of the accused." State v. Johnson, 226 La. 30, 74 So.2d 402, 407 (1954).
For the reasons stated, this assignment of error lacks merit.
For the above and foregoing reasons the conviction of Joseph Freeman, Jr. is affirmed.
AFFIRMED.
NOTES
[1] In the contested statement the prosecutor informed the jury as follows:

Also, there's one other objective that I forgot. I'm glad I went over my list. In Mr. Akin's.... uh ... in this structure that's in his backyard ... it's a carport is what has a door. Well, that afternoon when they went out there to look for everything the door was open and there was a red flashlight laying on the floor. I don't have the flashlight, it's been destroyed, and there's a policeman that's going to be here to talk about what happened to the flashlight, but, of course, whenever you have an object like that someone obviously has in their hand in August when hands are sweating you usually get a print off of that. Sometimes you can and sometimes you can't. It just depends. I'm going to have an officer here to testify to tell you what happened to the flashlight and whether or not there was a fingerprint or not.