643 So.2d 870 (1994)
STATE of Louisiana,
v.
Troy DUGAR, Defendant-Appellant.
No. CR93-718.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*872 Robert Richard Bryant Jr., Paul Peter Reggie, for State of Louisiana.
Thomas L. Lorenzi, Clive Adrian Stafford Smith, for Troy Dugar.
Before GUIDRY, C.J., and DECUIR and PETERS, JJ.
DECUIR, Judge.
The defendant, Troy Dugar, was indicted for the first degree murder of Donald L. Williams, and the state sought the death penalty. The defendant, represented by counsel, entered a plea of "Not Guilty," requested a trial by jury, and moved for the appointment of a sanity commission. Based on the testimony of the appointed commission, the court found the defendant mentally *873 competent and able to proceed to trial. A unanimous jury of twelve found defendant guilty of the first degree murder of Donald L. Williams and recommended that the defendant be sentenced to death. After sentencing, defense counsel filed a Motion and Order for Appeal and a Designation of Record. The court granted defendant's motion.
Subsequently, new counsel for defendant requested a hearing to determine whether the defendant was competent to assist counsel on his appeal. The Louisiana Supreme Court ordered the trial court to consider and rule on any motion having to do with the defendant's competence. State v. Dugar, 527 So.2d 307 (La.1988). The trial court ruled that the defendant was not able to assist on his appeal. As a result, the case remained in the context of a post-conviction/pre-appeal for four and one-half years.
On April 2, 1993, the Louisiana Supreme Court issued a per curiam order transferring the defendant's appeal to this court. Dugar v. State, 615 So.2d 1333 (La.1993). The court's decision was based on the fact that the defendant was fifteen years old at the time he committed the crime which did not allow the state to constitutionally enforce his sentence of death. Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). On the same date the court in another per curiam order addressed the application for post-conviction relief brought on behalf of defendant by his father, Lancaster Dugar, seeking to vacate his son's conviction for first degree murder and sentence of death on grounds that defendant presently lacked the capacity to proceed with his appeal. Addressing the actual merits of defendant's claim, the supreme court found that the defendant's present circumstances did not require abatement of the prosecution against him and that defense counsel could proceed with an appeal on defendant's behalf despite the district court's finding of incompetence. Dugar v. Whitley, 615 So.2d 1334 (La.1993).
Defendant appeals alleging numerous assignments of error in support of his contention that his conviction should be reversed.

ERRORS PATENT
After review of the record, we find there are no errors patent.

FACTS
On October 26, 1986, the defendant, Troy Dugar, waited in ambush for an unsuspecting victim outside the Immaculata Center in Lafayette, Louisiana. The victim, Donald L. Williams, was held up at gunpoint, tied up and forced into the trunk of his car by the defendant.
The defendant then drove to Crowley, Louisiana, where he picked up James Moore and Moore's brother. The defendant asked James Moore to accompany him to Houston, Texas, and Moore agreed. After Moore's brother was dropped off, Dugar and Moore rode around Crowley for a short while. During this time, the defendant told Moore what he had done. The defendant also told Moore that the victim was still trapped in the trunk. Moore observed a gun on the front seat of the car.
As the two headed towards Houston, Texas, and neared Lake Charles, Louisiana, the defendant told James Moore he intended to kill the victim "under the bridge." However, when defendant could not find a safe place to commit the offense, they proceeded to the nearby town of Sulphur, Louisiana. They traveled down Highway 90 and turned down a gravel road. The defendant turned the engine off and instructed Moore to turn the headlights off. Moore testified that the defendant opened the trunk and at that time he heard the victim plead "[P]lease don't kill me. I'll do anything (what) you want me to do." Moore stated he stayed in the car, put his head down and at that point defendant shot the man. After defendant finished shooting, Moore raised his head and saw the defendant was again loading the gun. Moore put his head down and defendant shot the victim once again. Moore testified that he did not actually see the victim get out of the trunk. Rather, Moore stated it felt as if the victim fell out of the trunk. After shooting the victim the defendant got back into the car and handed the gun to Moore who reloaded the gun and threw the spent cartridges outside the window.
*874 The defendant and Moore proceeded on to Houston, Texas. There they parked the car in a parking lot in downtown Houston and attempted to cover up their connection with the car. The defendant broke the license plate off and attempted to break the ignition. The license plate, floor mats, a baby car seat, and some bags found in the trunk were thrown into a trash dumpster. The gun was thrown down one drain and the remaining bullets were thrown down another drain. The car was brought to a carwash where the inside was cleaned out because the defendant did not want the police to find any fingerprints. The defendant then called his father, Lancaster Dugar (a Louisiana State Trooper) in Crowley, Louisiana, and asked his father to come for them. In the meantime the Houston Police Department detained the two as runaways until Lancaster Dugar picked them up.

COMPETENCE TO STAND TRIAL
By this assignment of error defendant argues his conviction was not valid because he was not competent at the time of his trial.
Two sanity hearings were held in the present case. The first, a pretrial sanity hearing, was held on April 15, 1987, and resulted in the determination that defendant was competent to stand trial. The second, a post-conviction sanity hearing on December 14, 1988, resulted in the finding that defendant was incompetent to assist on his appeal.
At the April 15, 1987 pretrial sanity hearing, Drs. Morin and Willis submitted reports to the court revealing that the defendant met all three of the Bennett criteria and that he was able to understand his legal rights and assist counsel in his defense. See State v. Bennett, 345 So.2d 1129 (La.1977), on rehearing. Dr. Morin testified that although the defendant did not have a mental disease or defect he seemed to have a personality disorder. Dr. Morin also indicated the only sign of paranoia he saw in the defendant was an allegation by the defendant that he might have been drugged in jail which he later admitted was his own imagination.
Dr. Morin also indicated that the defendant was capable of understanding the nature of the charge and its seriousness, that he understood what defenses were available to him, that he could distinguish a guilty plea from a not guilty plea and could understand the consequences of each, that he was aware of his legal rights, and that he could understand the extent of possible verdicts and the consequences of a conviction. In addition, Dr. Morin reported the defendant was able to recall and relate facts pertaining to his actions and whereabouts at certain times, he was able to listen to the testimony of the witnesses and inform his lawyers of any distortions or misstatements, and was also capable of testifying on his own behalf.
Likewise, Dr. Willis found the defendant able to understand his legal rights and assist counsel in his defense and concluded that the defendant was able to meet the Bennett criteria and was sane and competent to proceed.
Notably, Dr. Morin, who testified at both sanity hearings, came to disparate conclusions. At the pretrial sanity hearing Dr. Morin found the defendant sane and competent to stand trial. Thereafter, at the post-trial sanity commission, Dr. Morin found he was insane and unable to stand trial. Despite Dr. Morin's finding, the Louisiana Supreme Court in Dugar v. Whitley, 615 So.2d 1334 (La.1993) found the defendant's present circumstances did not require abatement of the prosecution against him and determined that defense counsel could proceed with an appeal on defendant's behalf despite the district court's finding of incompetence.
Although defense counsel places great weight on Dr. Morin's December 14, 1988 finding that defendant was insane, a thorough review of the record reveals that Dr. Morin's opinion did not change as much as defense counsel wishes us to believe. Prior to the actual post-trial sanity commission hearing, a hearing on defendant's demand for an opposition hearing relating to the capital sentencing report was held on February 5, 1988. At this hearing Dr. Morin reaffirmed his findings of April 15, 1987, that the defendant was at the time able to assist in all phases of trial.
The fact that defendant was found incompetent to assist on appeal and is currently on *875 medication has no bearing on his competence at the time of the commission of the crime or at trial. Thus, contrary to the defense's assertion, the defendant was not tried while incompetent to stand trial in violation of his constitutional rights. This assignment of error lacks merit.

INDEPENDENT PSYCHIATRIC EXAMINATION
Defendant next argues he was denied his right to an independent psychiatric evaluation at trial to testify to his incompetency and his insanity at the time of the offense.
As discussed above, a determination was made after the April 15, 1987 sanity hearing that the defendant was competent to stand trial. Furthermore, the defendant did not plead not guilty by reason of insanity.
La.Code Crim.P. art. 651 provides in part:
When a defendant is tried upon a plea of "not guilty", evidence of insanity or mental defect at the time of the offense shall not be admissible.
Therefore, the issue of defendant's sanity was not an issue at trial.
In support of his argument the defendant cites Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In Ake, the Supreme Court reversed Ake's conviction holding that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the constitution requires that a state provide access to a psychiatrist on this issue if the defendant cannot otherwise afford one. Ake at 77, 105 S.Ct. at 1091-1092.
The facts presenting themselves in Ake are distinguishable from those in the present case. In the instant case, the defendant was found to be competent to stand trial prior to trial. Therefore, the issue of his sanity was resolved pretrial and was not an issue at trial. Therefore, under Ake there was no requirement or right to an independent mental health expert. This assignment of error lacks merit.

PROSECUTORIAL CONDUCT
Defendant raises two separate issues in this assignment of error, first contending that reversible error was committed when the prosecutor brought up the subject of defendant's failure to waive his constitutional rights.
At trial, Calcasieu Parish Sheriff's Deputy Donald Delouche was called to testify about defendant's arrest at his home in Crowley, Louisiana. The prosecutor asked Deputy Delouche if he was present when and if the defendant was advised of his Miranda rights. Deputy Delouche replied that he was present and that defendant was advised of his Miranda rights. The prosecutor then asked Deputy Delouche if the defendant understood those rights to which Deputy Delouche responded that defendant had indicated he did. The prosecutor also asked Deputy Delouche whether the defendant chose to exercise any of those rights at the time, or whether his father or any other adult chose to exercise those rights for him, and Deputy Delouche replied "No." At that point defense counsel objected and moved for a mistrial alleging that the state, by eliciting from Deputy Delouche a response which indicated that the defendant declined to give a statement, made a direct comment on the defendant's exercise of his privilege against self-incrimination. The motion was denied by the trial court.
It is unclear what defense counsel is actually alleging about the defendant's constitutional rights. In brief defense counsel does no more than allege that "it is entirely improper to emphasize that the accused did not `come clean' with the police" citing Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
It is clear from a complete reading of all relevant testimony that the state was not emphasizing that the accused did not "come clean" with the police as asserted by the defense nor did the state try to get the jury to make a negative inference concerning defendant's silence. Furthermore, although the trial court did not admonish the jury to disregard this remark, La.Code Crim.P. art. 771 requires only that the trial court admonish the jury upon request by counsel. Because no request was made, the granting of a mistrial was discretionary with the trial *876 judge "`if [he] ... is satisfied that an admonition is not sufficient to assure the defendant a fair trial.'" State v. Procell, 365 So.2d 484, 491 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979), citing La.Code Crim.P. art. 771 and State v. Smith, 336 So.2d 867 (La.1976). We find no error in the trial court's ruling.
Defendant also contends that later during the trial reference to defendant's "failure to waive his constitutional rights" was again made by the prosecutor during the testimony of Captain Joseph LeBlanc of the Crowley Police Department. The following is a relevant excerpt from the testimony of Captain LeBlanc:
BY MR. BRYANT:
Q Captain LeBlanc, while at the Crowley Police Department, did Mr. Dugar make any statement or ask you any questions?
A Okay, sir, we arrived at the Crowley Police Department. Deputy Delouche and I got down. I brought him directly to the book-in window where the dispatcher was booking him in. I think Deputy O'Rourke with the Calcasieu Parish Sheriff's Office was also around the area. The young man said, I'm in serious trouble. Can I get the electric chair for this? That's the question asked by him. We did not ask him any questions.
Q And you asked no questions after that statement, is that correct?
A No, sir. His father arrived at the office. His father told us again, he didn't want anybody speaking with the young man because he was going to get him a lawyer with
Q All right, but there were no other statements?
A No, sir.
We find that defendant cannot now argue on appeal that a mistrial should have been granted with respect to the comments made during Captain LeBlanc's testimony as no request for a mistrial was made at trial. See La.Code Crim.P. arts. 770, 771 and 841.
Defendant also alleges his constitutional rights were violated when Captain LeBlanc testified that the defendant was handcuffed and placed in the police car and his father was advised that he was being transported to the police station.
In support of its argument, the defense cites Elledge v. Dugger, 823 F.2d 1439 (11th Cir., 1987), rehearing denied, 833 F.2d 250 (1987), which refers to a defendant being seen by the jury in shackles during trial. Defendant's reliance on Elledge is misplaced because in the present case the defendant was not in shackles or handcuffs while in the courtroom. Rather, Captain LeBlanc's testimony refers to the handcuffing of the defendant after he was advised of his rights at the time of his arrest, which is normal police procedure. For the above and foregoing reasons there is no merit to any of these contentions. This assignment of error lacks merit.

BRADY MATERIAL AND CREDIBILITY OF WITNESSES
Assignments of error numbers 4 and 5 will be discussed together as they present common facts and issues.
Defendant first contends the prosecution suppressed critical exculpatory evidence which could have provided the defense with strong evidence of defendant's insanity at the time of the offense, in violation of Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Defendant alleges the prosecution suppressed at least two pieces of critical exculpatory evidence relating to James Moore's testimony. The first piece of evidence defendant alleges was wrongfully suppressed by the state was a videotape of the defendant and James Moore committing an armed robbery at a convenience store in Orange, Texas. Apparently, the videotape shows the defendant armed with a handgun in the process of taking a half gallon of milk and a packet of vanilla cookies. Defendant argues a Brady violation occurred with respect to the videotape because it was not revealed to the defense prior to trial but was instead released to the press only after the completion of the trial. Defendant asserts the videotape is exculpatory in nature because only an insane person would commit an armed robbery to abscond with a half of a *877 gallon of milk and a packet of cookies. The defense contends this was critical evidence that defendant was not sane. The defense also alleges that a statement given by James Moore prior to trial corroborating the videotape of the robbery was exculpatory material that was wrongly suppressed by the state.
Although defense counsel asserts this is exculpatory material necessary to set forth an insanity defense at trial, no insanity defense was ever presented at trial. Furthermore, contrary to these assertions, the videotape and the statement of James Moore, both address a separate crime committed after the murder and could have constituted an impermissible reference to "other crimes" evidence. See La.Code Evid. art. 404(B).
Defendant also takes issue with the testimony of James Moore, arguing there was an inherent unreliability to this accomplice's testimony and that "[a] child should not be sentenced to life without parole for murder in the first degree on the basis of the testimony of a witness who has been paid for his confabulation." Defendant asserts James Moore, via his sister, Charlotte Moore, was paid one thousand dollars by Crime Stoppers for his testimony against Troy Dugar.
The record reflects Charlotte Moore brought her brother, James Moore, to the Crowley Police Department so that he could give his statement to the authorities. During trial James Moore testified that he came forth voluntarily because he did not want to get in any trouble. As a result of Moore's statement the Calcasieu Parish Sheriff's Department was able to locate the murder weapon, bullets, the victim's vehicle and several other items in Houston, Texas.
Although the state asserts Moore was never paid anything for his testimony, a review of the record reveals the following exchange between James Moore and the defendant's counsel:
Q Did you designate her as the recipient of any money that would come from such an organization?
A Yes, sir.
Q Do you know how much money she received?
A A thousand dollars.
Therefore, it is quite probable that James Moore could have received money from Crime Stoppers which he in turn designated to his sister, Charlotte Moore. However, defense counsel cites no applicable jurisprudential authority upon which to strengthen his argument. Instead, he simply quips that "Our revulsion at paying witnesses to secure the deaths of others is deeper even than a natural horror at the twelve pieces of silver that Moore and Judas Iscariot received."
It is a common and acceptable practice for people having knowledge of unsolved crimes to receive compensation for their statements that result in the solving of these crimes. As stated previously, James Moore testified that he came forth and gave a statement because he was afraid of getting into trouble. Although the testimony of an accomplice should be received and acted on with caution, such testimony constitutes competent evidence. State v. Lewis, 236 La. 473, 108 So.2d 93 (1959). Therefore, defendant's argument addresses itself to the weight of Moore's testimony and not to its admissibility. The weight accorded to admissible evidence is a matter for the jury, not the court. State v. Williams, 343 So.2d 1026, cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977).
Defense counsel also argues that it is "just wrong that Moore should receive six months in the juvenile detention center and a payment, whilejust because Moore snitched and Troy was too crazy to do itTroy gets life imprisonment without possibility of parole." We find that any sentence given to James Moore is totally irrelevant to any assertions of error relating to defendant's present appeal.
The second issue raised by defendant relates to the testimony of Brian Chisom. Defendant argues the dubious evidence provided by the "snitch" Brian Chisom should have been excluded. Defendant characterizes Brian Chisom, a male prostitute, as an "unsavory character" and contends that Chisom was helping out the state to make sure that his various felonies would be reduced to misdemeanors. Defendant also asserts that while no disclosures were made of deals with *878 Chisom, his attorney admitted that he had discussed the possibilities of plea bargains with him. In essence, defendant alleges Brian Chisom's testimony should be doubted because he had a motive for testifying as he did, i.e., preferential treatment or a possible plea bargain. Defense counsel, in a whirlwind of accusations, alleges that Brian Chisom was "out to get Troy, mentally unstable as Troy was at the time," and that Chisom preyed on the defendant promising to help him make up stories.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witness and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3d Cir.1987), writ denied, 507 So.2d 226 (La.1987).
A fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573-574 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
Brian Chisom's prior record was fully revealed during trial. In fact, Chisom himself spoke quite candidly about his past brushes with the law. On cross-examination counsel for the defendant questioned Chisom about his "unsavory character" and the jury was free to believe or not to believe all or part of Chisom's testimony. Furthermore, although defense counsel seeks to confuse the issue, there is no proof that Chisom received any preferential treatment whatsoever. Defendant argues the manipulative Chisom, clearly working with favors from the prosecution in mind, cautioned the defendant to write down his statement. Although the record reflects Chisom had in his possession letters written by the defendant admitting to the offense, defense counsel's conclusion that Chisom was preying on the defendant is totally unsubstantiated by the record. During trial, defense counsel sought to exclude all of Chisom's statements. In brief defense counsel cites excerpts from the trial transcript in support of this proposition. However, after reviewing the record, we find that defense counsel made no objection to these statements during trial. La.Code Crim.P. art. 841 provides that an irregularity or error cannot be availed of after the verdict unless it was objected to at the time of its occurrence.
Defendant also contends he was improperly precluded from impeaching Brian Chisom. Apparently, defendant is referring to a hearsay objection made by the state and sustained by the trial court which precluded the defense from questioning Brian Chisom's attorney, Wade Smith, about certain letters the defendant gave Chisom admitting to the crime. However, the defense made no contemporaneous objection to the trial court's ruling and is therefore precluded from raising this as error on appeal. La.Code Crim.P. art. 841.
The final issue defendant sets forth is that the jury was not provided with an instruction on accessories and informants with which to assess James Moore's credibility. No special charges were requested pursuant to La.Code Crim.P. art. 807. Furthermore no contemporaneous objection was made to the judge's charge, thus defendant is precluded from raising the issue on appeal by La.Code Crim.P. art. 801. See also State v. Marcell, 320 So.2d 195, 198 (La.1975).
In any event, the Supreme Court in State v. Murray, 375 So.2d 80 (La.1979), citing State v. May, 339 So.2d 764 (La.1976), noted that it is only when the state's case relies upon the uncorroborated testimony of a purported accomplice, the trial judge should instruct the jury to treat such testimony with great caution. However, in Marcell, supra, the court further noted where there is material corroboration of the accomplice's testimony, *879 the cautionary accomplice instruction is not required. For the foregoing reasons this assignment of error lacks merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant next contends he was denied the effective assistance of counsel. In this assignment of error defendant sets forth a lengthy list of his counsel's failures at trial. However, in brief, defendant does not address these but instead stresses his counsel's inadequate effort to raise and present mental health issues. The defense argues trial counsel did not secure any of the defendant's prior medical health records until the middle of trial, and did not secure or present any evidence in support of possible mental health defenses.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-prong test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that this deficiency prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To establish a claim of ineffective assistance of counsel a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Fickes, 497 So.2d 392 (La. App. 3d Cir.1986), writ denied, 515 So.2d 1105 (La.1987).
In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Strickland, supra.
We are somewhat concerned as it remains unclear why trial counsel did not have these past medical records, nor is it clear why defense counsel did not pursue this line of defense at trial. Therefore, we find defendant's claim of ineffective assistance of counsel would be more properly raised in an application for post-conviction relief to enable the district judge to order a full evidentiary hearing on the matter. State v. Burkhalter, 428 So.2d 449 (La.1983). State v. Seiss, 428 So.2d 444 (La.1983).

PHOTOGRAPHIC EVIDENCE
The defendant next contends the photographs of the victim were gruesome and prejudicial and should not have been admitted into evidence.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Burdgess, 434 So.2d 1062 (La. 1983); State v. Lindsey, 404 So.2d 466 (La. 1981), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983). Furthermore, the determination of the use of photographs at trial is largely left to the discretion of the trial judge, and his ruling will not be disturbed absent a clear showing of an abuse of that discretion. State v. Cowans, 503 So.2d 772 (La.App. 3d Cir.1987); State v. Segura, 464 So.2d 1116 (La.App. 3d Cir.), writ denied, 468 So.2d 1203 (La.1985).
After a thorough review of these photographs, we find the trial court did not err in allowing the prosecution to introduce these photographs into evidence. For the above and foregoing reasons this assignment of error lacks merit.

WAIVER OF RIGHTS
Defendant next contends the prosecution did not sufficiently demonstrate that he understood the rights he was giving up when he made a statement to the police.
*880 The defense argues various statements were introduced against the defendant and because the defendant "... was, and remains, a very imbalanced young man, these statements were vague and unclear, and should have been excluded."
One statement the defense objects to in particular is as follows:
"I'm in serious trouble. Can I get the electric chair for this?"
Before the state may introduce into evidence what purports to be a confession or statement of a defendant, it must first affirmatively show that it was freely and voluntarily given and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. Code Crim.P. art. 703(G); La.R.S. 15:451. In addition, if the statement was made during custodial interrogation, the state must prove that the accused was advised of his Miranda rights and intelligently and voluntarily waived those rights. La. Const. Art. I § 13 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Coleman, 395 So.2d 704 (La.1981).
To meet its burden the state may rely on the presumption of sanity provided in La.R.S. 15:432. Because of this presumption, the defendant has the burden of proving a mental defect which renders him unable to understand his rights and, therefore, incompetent to waive them. State v. Glover, 343 So.2d 118 (La.1977). The state is not required to negate a defendant's mental abnormality, but it must prove beyond a reasonable doubt that the confession or statement a defendant gave was voluntary. The defendant must then prove the existence of a mental defect or disorder that prevented his confession or statement from being intelligently and voluntarily made. State v. Glover, supra. However, the law is clear that when the issue on appeal is whether an accused's level of intellectual capacity precludes him from effectively understanding the essential nature of his right to remain silent, to have assistance of counsel, and of the consequences of his speech, much discretion is accorded to the trial court's determination. State v. Lefevre, 419 So.2d 862 (La.1982); State v. Ashworth, 554 So.2d 271 (La.App. 3d Cir.1989), writ denied, 561 So.2d 113 (La. 1990).
In the present case the defendant had not been questioned by police officers and had been fully advised of his Miranda rights prior to freely and voluntarily making statements to the officers. Furthermore, at the pretrial sanity hearing it was determined that the defendant was able to understand his rights and assist in his defense. There is nothing to support the allegations that the defendant did not understand what he was doing when he made those statements. This assignment of error lacks merit.

CHAIN OF CUSTODY
Defendant next argues the chain of custody regarding certain evidence was not sufficiently and properly established by the prosecution.
At trial Deputy Scott Merritt of the Calcasieu Parish Sheriff's Office testified that after study the projectiles were the same casings he recovered from the crime scene on October 27, 1986. Deputy Merritt testified that the .38 special spent cartridge cases were the same ones recovered by him from the crime scene. Deputy Merritt acknowledged that he had been the one to place this evidence in the envelopes and seal them and also testified he had handed these envelopes over and he had evidence receipts in his possession.
Defendant apparently takes issue with the fact that Deputy Merritt agreed that there were certain spots on the envelopes which indicated that they were opened by some means other than through the seal that he had placed on them. At trial the defense asked Deputy Merritt whether that would indicate to him that sometime after he turned them over they were examined and Deputy Merritt responded affirmatively noting that the lab had examined them albeit outside his presence. We find that the chain of custody was sufficiently established to meet the requirements for the proper admissibility of demonstrative evidence as set forth by the Louisiana Supreme Court in State v. Gordy, 380 So.2d 1347, 1352 (La.1980).

*881 JUROR CHALLENGES

By this assignment of error defendant alleges the trial court erred in denying defendant's challenges for cause of Jurors Benny Broussard (Juror # 18) and Robert Butts (Juror # 15). However, in brief defendant does not set forth any argument relative to the court's denial of defendant's challenge for cause to Juror Robert Butts. Therefore, pursuant to Uniform RulesCourts of Appeal 2-12.4, no further discussion of this particular challenge for cause is necessary.
During voir dire, Mr. Broussard informed the court that he had a hearing impairment and defense counsel challenged him for cause. The court questioned Mr. Broussard on his ability to hear and directed Mr. Broussard to raise his hand if at any time during trial he could not hear a witness, either counsel, or any of the proceedings. The court further questioned Mr. Broussard asking him if he thought that his hearing problem was so severe that he could not hear the proceedings in the court, to which Mr. Broussard replied, "I don't mind trying. I'd hate to do anybody an injustice. I really don't know whether I would have any trouble or not. I don't know how much distraction there would be in the courtroom at the time." After this statement by Mr. Broussard the court again asked him, "But you can hear me now? You can hear counsel, when he speaks louder?", and Mr. Broussard replied, "Yes."
The trial judge, finding Mr. Broussard competent to serve in spite of his hearing impairment, stated, "The court feels that he can hear well enough to follow the proceedings and if at any time we are not speaking loud enough that he could raise his hand and inform the court that he would be in a bad position and he cannot hear. With that, will you follow the court's instructions and raise your hand any time that you cannot hear?" Mr. Broussard replied, "Yes, I will." The trial judge was satisfied Mr. Broussard was competent to serve, and denied the challenge for cause.
A loss of hearing in and of itself will not disqualify a person from serving on a jury. A prospective juror may be challenged for cause, however, when there is a loss of hearing which satisfies the court that the juror is incapable of performing his duties. La.Code Crim.P. art. 401(A)(4) and art. 401(B)(1).
Trial judges are vested with broad discretion in determining whether a juror suffering from a physical infirmity is competent to serve. A determination based on an examination by a judge that a juror's hearing is not so impaired as to make the juror incapable will not be disturbed absent an abuse of discretion. State v. Freeman, 539 So.2d 739 (La.App. 3d Cir.) writ denied, 543 So.2d 17 (La.1989); State v. Willis, 262 La. 636, 264 So.2d 590 (1972).
We find no abuse of discretion by the trial judge. This assignment of error lacks merit.

SPEEDY TRIAL
Defendant first contends he was denied his right to a speedy trial alleging he has been denied his right to appeal for six years and alleges this is a clear denial of due process. We note that much has happened over the past six years that has hampered the rendering of an appellate decision. One such factor is the defense's action in having the defendant declared incompetent four and one-half years ago thereby delaying the ultimate validity of the defendant's conviction and sentence.
The cases cited by the defendant in support of his allegation that he was denied due process refer to delays in receiving trial court minutes or trial transcripts. In the present case the delay was in fact caused by defense counsel's own actions in having the defendant declared incompetent to assist on appeal and doing nothing thereafter for over four years.
Moreover, this issue could be more properly addressed by the Louisiana Supreme Court as this case was before them until its recent transfer in Dugar v. State, 615 So.2d 1333 (La.1993).
Ironically, defendant also asserts that he should not be required to proceed with his appeal when he is incompetent. Defendant argues that the Louisiana Supreme Court has entered two conflicting orders, first ordering a hearing to determine the defendant's competency to appeal and thereafter in Dugar v. State, 615 So.2d 1333 (La.1993) holding that he must appeal even if incompetent.
*882 The Louisiana Supreme Court has not rendered conflicting opinions. What the court has determined is that defense counsel may proceed with the defendant's appeal on his behalf despite the district court's finding that the defendant is incompetent to assist on appeal. Dugar v. Whitley, 615 So.2d 1334 (La.1993). We decline to render a pronouncement contrary to those issued by the Louisiana Supreme Court.

COMPLETE RECORD
Defendant argues the failure to provide him with a complete record denied the defendant the right to a meaningful appeal. However, this assignment of error was not briefed in his supplemental brief and is therefore considered abandoned pursuant to Uniform RulesCourts of Appeal 2-12.4.

CONCLUSION
We find no merit to any of defendant's assigned errors. Defendant's claim of ineffective assistance of counsel would be better addressed in a post-conviction setting so that an evidentiary hearing could be held fully exploring the issue defendant raised in brief. Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.