| JOLLEY, J.
Defendant, James Rabun (“Rabun”), appeals his convictions and sentences for armed robbery and conspiracy to commit armed robbery from the Fourth Judicial District Court, Morehouse Parish, Louisiana. For the following reasons, we affirm his conviction and sentence for armed robbery and vacate the conviction and sentence for conspiracy.
Facts
The state charged Rabun by bill of indictment stating that he committed four armed robberies and conspired with Tony Moore, a.k.a. Tony Jackson (“Moore”), to commit those robberies. Rabun was tried on all eight charges, but ultimately was only convicted in connection with one incident which occurred on March 18, 2002, at the Citgo East in Bastrop, Louisiana. Those convictions are the subject of this appeal.
At the trial for that robbery, Jamilla Zimmerman (“Zimmerman”) testified that she was working the midnight shift on March 18, 2002, when the business was robbed. She testified that there were no cars in the parking lot when a black male, armed with a gun, jumped the counter and indicated he wanted her to open the cash register. Zimmerman testified that the perpetrator took cash from a money drawer and that she locked herself in the bathroom for a minute until the perpetrator left. Zimmerman testified that she was positive the perpetrator did not drive up in a vehicle prior to the robbery. She described the weapon used as a small caliber, black or blue handgun, and testified that it *187 looked like the one the assistant district | ^attorney showed her. The perpetrator obtained $952.00. Zimmerman testified that she called the police within 90 seconds after the perpetrator left the store, and she subsequently identified him to be Moore from a photo line-up.
Bastrop police officer Gerald Boley (“Boley”) testified that he investigated the robbery. Boley stated that when he heard the radio call about the robbery, he was half a block from the scene and began looking for a suspect vehicle. He saw a white car driving through a grocery store parking lot, very close to the Citgo East, at a high rate of speed, and the car pulled right in front of Boley’s squad car. Boley testified that he made a traffic stop and video-taped the stop. He identified Rabun as the driver of that vehicle and stated that he knew Rabun. Boley’s investigation showed that the vehicle was licensed to Rabun. Boley testified that he did not know the passenger, so he patted him down, but did not find any weapon on him.
Moore testified that he pled guilty to armed robbery and conspiracy to commit armed robbery resulting in an 18-year sentence in exchange for his agreement to testify truthfully at Rabun’s trial. At the trial Moore stated that he was living with Quentina Bradshaw (“Quentina”) in Bas-trop at the time of the robbery, and that Rabun lived there as well. Moore stated he and Rabun planned the Citgo East robbery for a couple of days and discussed where Rabun would drop Moore and where Rabun would pick him up. Moore testified that they looked for surveillance cameras, and they decided to do the robbery at night because there would be only one person working. 1 ¡¡Moore stated that the plan was for Rabun to wait for him behind a nearby grocery store.
Moore testified that after that robbery he had to wait for a few minutes for Rabun to pick him up. As they left the parking lot, a police officer stopped them; however, the officer did not search the car. According to Moore’s testimony, the stolen cash, the weapon and the clothes he changed out of were on the front seat of the vehicle when the officer stopped them. Moore further testified that he and Rabun split the proceeds of the robbery. Finally, Moore testified Rabun furnished the pistol used in the Citgo East robbery and that after that robbery Rabun gave the pistol to Anthony Bradshaw (“Anthony”) and told him to hide it.
Anthony, Quentina’s son, also testified at the trial, and he claimed he did not know Moore. Anthony testified that he led Bas-trop police officer Chuck Wilson (“Detective Wilson”) to a .38 caliber handgun. He stated that he had thrown the weapon away from the house to get rid of it. Anthony testified that his mother had given him the gun and that he never saw the weapon before his mother handed it to him.
Detective Wilson testified that he investigated the Citgo East robbery and arrested Moore and Rabun and recovered the crime weapon. Upon being advised by Moore that Anthony was given the gun to hide following the robbery, Det. Wilson testified that he brought in Anthony with his mother, Quentina, for an interview. Detective Wilson testified that after he advised Anthony and Quentina of their Miranda rights, Anthony stated that Ra-bun gave him the gun after the Citgo East robbery and had told him to |4hide it. Detective Wilson further testified that Anthony described hiding the gun in some bushes by a trailer not far from Quentina’s residence. Anthony later took Det. Wilson directly to the location of the weapon which was located 50 to 100 yards from Quentina’s residence. Detective Wilson testified that he arrested Moore and that *188 when Moore gave his statement naming Rabun as his accomplice, he appeared to be sober and normal.
Quentina testified that Rabun lived at her house in February and March of 2002 and that he dated her daughter. Quentina stated that although Rabun and several other people lived with her, Moore did not live with her. She testified as to instructing Anthony to throw the gun into the bushes on the night Rabun was arrested. She also stated that she had gotten the gun from Moore. Quentina also verified she had been present when Det. Wilson interviewed her son, Anthony, but denied that Anthony said he got the gun from Rabun.
At the trial’s conclusion, a unanimous jury found Rabun guilty on the charges of the March 18, 2002, armed robbery and conspiracy to commit armed robbery. The trial court denied a timely motion for post-verdict judgment of acquittal and, after imposing concurrent sentences of 15 years at hard labor without benefits for the completed offense and seven years for the conspiracy, denied a motion for reconsideration of sentence. Rabun now appeals his convictions and sentences.
Discussion
On appeal, Rabun enumerates three assignments of error. Rabun’s second assignment of error, which we will address first, is two-pronged. | RFirst, Ra-bun contends that the state failed to prove him guilty of both armed robbery and conspiracy to commit armed robbery. Second, he further argues that the proof and conviction of both offenses violates his right against double jeopardy. As to Ra-bun’s argument regarding the evidence against him, we find that the evidence of record viewed in the light most favorable to the prosecution, supports his convictions for armed robbery (as a principal) and for the conspiracy to commit that armed robbery beyond a reasonable doubt.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, |635,189 (La.App.2d Cir.10/31/01), 799 So.2d 684. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
To convict an accused of conspiracy, the prosecution must prove an agreement or combination of two or more persons for the specific purpose of committing a crime and an act done in furtherance of the object of the agreement or combination. La. R.S. 14:26; State v. Valrie, 1999-226 (La.App. 3d Cir.10/13/99), 749 So.2d 11, *189 unit denied, 1999-3236 (La.04/20/00), 760 So.2d 343.
Specific intent, for the purpose of proving a criminal conspiracy, is that state of mind which exists when the circum-. stances indicate the offender actively desired the proscribed criminal consequence to follow. Intent may be inferred from the circumstances of the actions of the offender. State v. Johnson, 2001-1084 (La.App. 3d Cir.02/06/02), 817 So.2d 120.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 1995-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687, writs denied, 2000-3070 (La.10/26/01), 799 So.2d 1150, 2001-2087 (Lap.|04/19/02),7 813 So.2d 424. This standard, legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442.
On appeal, Rabun argues that the only evidence presented against him was the uncorroborated testimony of Moore. However, we find that Moore’s testimony was sufficiently corroborated. Although Rabun was convicted in connection with only one robbery, the jury heard evidence regarding the three other robberies he was charged with. In that vein, Officer Michael Farrar with the Morehouse Parish Sheriffs Office testified that on February 19, 2002, he observed a white car, which matched Rabun’s car, parked down the street from the Circle K outside of Bas-trop. Moore testified that Rabun dropped him off at that location, rather than in the parking lot, so Moore could commit a robbery of the Circle K; Officer Farrar’s description of a white car matched the description of the vehicle used in the subject robbery. On March 18, 2002, moments after the Citgo East robbery, Officer Boley stopped Rabun’s vehicle, a white car. A videotape of the incident showed Rabun and Moore standing outside Rabun’s white vehicle.
Additionally, the handgun used in the robbery was found near Rabun’s residence. Anthony’s.testimony was that his mother, Quentina, Isgave him the gun. However, it was Off. Wilson’s testimony that Anthony told him in the interview that Rabun had given Anthony the gun to discard.
Although conflicting testimony existed, the jury obviously found as more credible Moore’s testimony that Rabun actively aided and abetted him by planning the robbery and acting as the driver. In State v. Deruise, 98-0541 (La.04/03/01), 802 So.2d 1224, 1243, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court reiterated that “[t]he trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness.” It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.06/30/00), 765 So.2d 1062, 00-0150 (La.06/30/00), 765 So.2d 1066. It is our view that from the testimony read in its entirety, a rational juror could have found that Rabun and Moore acted in concert to take property of value from third persons by the use of intimidation while armed *190 with a dangerous weapon. Thus, the trial testimony, viewed in the light most favorable to the prosecution, supports the convictions for armed robbery (as principal) and for the conspiracy to commit that armed robbery beyond a reasonable doubt.
In the same assignment of error, Rabun maintains that the convictions violated his right against double jeopardy. Although his convictions for both offenses are supported by the law, as discussed herein, we agree that they nevertheless violate the prohibition against double jeopardy.
|9As a general rule, double jeopardy bars separate punishment for lesser included offenses where the defendant has been convicted of the greater offense. State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984).
A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15; La. C. Cr. P. art. 591; State v. Knowles, 392 So.2d 651 (La.1980). The test for double jeopardy to determine if there are two offenses or one is whether each of fense requires proof of an additional fact not required by the other offense. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Coody, 448 So.2d 100 (La.1984). Louisiana uses the “same evidence” test:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
State v. Steele, 387 So.2d 1175 (La.1980); State v. Knowles, supra; State v. Coody, supra; State v. Robertson, 511 So.2d 1237 (La.App. 2d Cir.1987), writ denied, 516 So.2d 366 (La.1988).
To remedy a violation of double jeopardy, the reviewing court vacates the conviction and sentence of the less severely punishable offense and affirms the conviction and sentence of the more severely punishable offense. State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990); State v. Lee, 554 So.2d 180 (La.App. 2d Cir.1989).
In the instant case, the elements and proofs of the conspiracy offense and the principal to armed robbery offense are the same. Both Rabun and |inMoore were concerned in the commission of a crime, one present and the other nearby. While Moore directly committed the act constituting the offense, Rabun aided and abetted or acted in furtherance of its commission by supplying the weapon, driving the getaway car and presumably acting as a lookout. Thus, they are principals. However, the same evidence proves that Rabun and Moore conspired to commit an armed robbery, i.e., there was an agreement or combination between Rabun and Moore for the specific purpose of committing a crime and both Rabun and Moore directly performed acts in furtherance of the object of the agreement or combination. Thus there is a violation of the prohibition against double jeopardy. Accordingly, Ra-bun’s conviction and concurrent sentence for the conspiracy count is hereby vacated.
In another assignment of error, Rabun argues that the trial court erred in failing to give a cautionary instruction as to Moore’s testimony, both at the time of the testimony and in the final jury instruction. Specifically, Rabun argues that his trial attorney failed to request such an instruction or the trial court should have given this cautionary instruction on its own *191 motion.[1] We find that this argument has no validity for the following reason.
At the trial no request was made for the special instructions under La. C. Cr. P. art. 807, which provides that the state and the defendant shall have the right before argument to submit to the court special written charges for Inthe jury. Such charges may be received by the court in its discretion after argument has begun, and the jurisprudence does not hold that such an instruction is required even if not requested by defense counsel, i.e., there is no sua sponte requirement to so instruct which is imposed on the trial judge.
A conviction can be sustained on the uncorroborated testimony of a purported accomplice, although the jury “should be instructed to treat such testimony with great caution.” State v. May, 339 So.2d 764 (La.1976). The May court further noted that a contemporaneous objection by the accused is a necessary prerequisite to appellate relief on an alleged inadequate jury charge. However, a cautionary instruction is not an absolute ne cessity when there is a material corroboration of the accomplice’s testimony. See State v. Murray, 375 So.2d 80 (La.1979). Corroboration is enough if there is evidence which confirms material points in an accomplice’s tale, and confirms the defendant’s identity and some relationship to the situation. State v. Schaffner, 398 So.2d 1032, 1035 (La.1981); State v. Dunn, 30,560 (La.App.2d Cir.02/25/98), 709 So.2d 852, 857. Although Rabun argues that this issue can be raised on due process grounds even though there was no objection at the trial, the contemporaneous objection rule is necessary to promote judicial efficiency and does not violate an accused’s rights under the state constitution. State v. Marcell, 320 So.2d 195, 198 (La.1975). When there is no request for a special instruction concerning accomplices and no contemporaneous objection is made to the charge, the defendant is precluded from raising the issue on appeal. State v. Dugar, 93-718 (La|App.12 3d Cir.10/05/94), 643 So.2d 870, 878-79, writ denied, 94-2712 (La.06/30/95), 657 So.2d 1019.
In the case sub judice, there was no request for a special cautionary instruction and there was no contemporaneous objection to the lack of this instruction at trial. La. C. Cr. P. art. 841; State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. We do not find that the jurisprudence requires that the instruction be given sua sponte. Regardless, we find that this assignment of error lacks merit because there was corroboration of the accomplice’s testimony as noted above. Finally, because there was no contemporaneous objection, this issue is not properly before this court for review and is therefore rejected on that ground.
In his last assignment of error Rabun contends the trial court did not give sufficient weight to certain personal circumstances of his, and that he should have been given the minimum sentence possible (ten years) due to: his age (18); his lack of prior felony convictions; his level of education (high school graduate); his work history (he worked at his family’s car wash business), and, he is an unmarried father. We disagree.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,-111 (La.App.2d Cir.03/01/2000), 754 So.2d 392, 394, writ denied, 2000-1467 *192 (La.02/02/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.02/26/97), 690 So.2d 864, writ denied, 97-0705 (La.09/26/97), 701 So.2d 979. The record shows that |13a presentence investigation report was ordered and that the trial court adequately considered its findings therein.
Rabun faced a sentence of 10 to 99 years at hard labor and his accomplice was sentenced to 18 years, after pleading guilty and agreeing to cooperate. We find that the sentence imposed on Rabun is at the low end of the range and is less than that meted out to his more actively involved accomplice. Absent a showing of manifest abuse of discretion an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App.2d Cir.01/28/04), 865 So.2d 280. In the instant case, we find that there is no clear showing of an abuse of the trial court’s sound discretion. Accordingly, Rabun’s sentence for the armed robbery is affirmed.
Conclusion
The evidence, viewed in the light most favorable to the prosecution, is sufficient to support the unanimous verdicts of guilty of armed robbery of the Citgo East in Bas-trop, Louisiana and conspiracy to commit that armed robbery. However, because the same evidence was needed and used to convict on both offenses, there is a violation of double jeopardy which requires the vacation of the conviction and sentence for the lesser offense of conspiracy to commit armed robbery. This has no practical effect on the sentence to be served. The sentence imposed for the armed robbery, which is not excessive, is therefore affirmed.
AFFIRMED IN PART; VACATED IN PART.

. Although Rabun argues that his trial counsel failed to request a special instruction to the jury, he does not raise an ineffective assistance of counsel argument.