970 So.2d 9 (2007)
STATE of Louisiana
v.
Christopher D. MARTIN.
No. 2007-KA-0791.
Court of Appeal of Louisiana, Fourth Circuit.
October 17, 2007.
*11 Eddie J. Jordan, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, Bonnie Kendrick, Legal Intern, Loyola University College of Law, New Orleans, LA, for Plaintiff/Appellee, State of Louisiana.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant, Christopher D. Martin.
(Court composed of Judge CHARLES R. JONES, Judge, EDWIN A. LOMBARD, Judge, Leon A. Cannizzaro, Jr.).
LEON A. CANNIZZARO, JR., Judge.
The defendant, Christopher Martin, was convicted of attempted simple burglary of an inhabited dwelling. He was sentenced to six years imprisonment. He is now appealing both his conviction and his sentence.

STATEMENT OF THE CASE
Mr. Martin was charged with one count of simple burglary of an inhabited dwelling in November of 2005. He pled not guilty at his arraignment in December of that year. A year later he was tried and found guilty of attempted simple burglary of an inhabited dwelling. After the district court judge received the report of a presentence investigation, Mr. Martin was sentenced to serve six years at hard labor in May of 2007. The sentence was to run concurrently with any other sentence imposed on Mr. Martin.

FACTS
New Orleans Police Department ("NOPD") Officer Heather Gore testified at the trial. Officer Gore stated that she and her partner received a call regarding a possible residential burglary in progress. They responded to the call by going to 2424 Audubon Street in New Orleans. A man at the corner of Audubon Street and Nelson Street pointed to the back yard of the Audubon Street address and stated that there was a black male there. Officer Gore and her partner then drew their guns and proceeded into the back yard. They found a black male in the screened area at the back of the house.
Officer Gore testified that when they saw the black male, they told him that they wanted to see his hands. He then laid down a tool that was in his hand and showed his hands to the officers. The officers put their guns away, handcuffed the suspect, and put him in the back of their police car.
When the suspect was asked why he was at the Audubon Street house, he said that he was "back there using the bathroom." Nevertheless, Officer Gore testified that the suspect did not have his pants down. She further stated that there was "[n]othing unbuttoned, no pants unzipped, no nothing."
Officer Gore also described the area of the house where the suspect had been found. She described it as a "wooden porch with screen all the way around the porch." She further testified that instead of walking from the house directly into the back yard of the house, one had to walk through a screened area that was "like a box with screen all the way around." The *12 screen door to the porch was torn open as if the suspect had tried to "undo the latch on the inside." Inside the porch, a glass pane in a French door that led into the main part of the house was broken.
Officer Gore testified that after the suspect, who was identified as Mr. Martin, was transported to the police station, he gave a statement to a detective. Officer Gore, however, did not take a statement from Mr. Martin.
NOPD Detective Anthony Edenfield also testified at the trial. He said that he went to the crime scene in a "backup capacity" as a "secondary unit." He described the crime scene. He stated that he noticed "a back window pane on the back door, the door is like a french [sic] door say where it's a series of class [sic] panes, one was broken." He described the rear of the house as being enclosed by a screened-in porch. Additionally, Officer Edenfield confirmed that there were tools on the porch when he arrived at the house, but he did not know whether the tools belonged to the owner of the house or whether Mr. Martin had brought them with him.
Detective Edenfield further testified that he was present when an interview of Mr. Martin was conducted, but he did not ask Mr. Martin any questions. He identified an audiotape of the interview, and it was played for the jury. On the tape Mr. Martin stated that he entered the porch at the house on Audubon Street for the purpose of using the bathroom. Detective Edenfield further said that although Mr. Martin said that he had not attended school past the ninth grade, Mr. Martin did not act as if he did not comprehend what was transpiring during the interview that was taped. Further, he did not appear to be under the influence of drugs when he was interviewed.
John Wesley Thomas was also a witness at the trial. Mr. Thomas stated that he lived at 2501 Audubon Street and that on July 14, 2005, he went home to eat lunch. When he was leaving his home to return to work after lunch, Mr. Thomas saw a man walking from Mr. Thomas' left to his right. The man then reversed the direction in which he was walking. He went around a corner and into the back yard of Mr. Thomas' neighbor. Mr. Thomas testified that he saw the man again when the police brought him out of the neighbor's yard, and he was able to identify the man accompanied by the police as the same man who had gone into the neighbor's back yard.
The crime victim, Penny Nunenmacher, was called as a witness. She described her house as a bungalow on the corner of Audubon and Nelson Streets. She said that the house had a "porch that basically is part of my bedroom, it opens off my bedroom and kitchen." She further stated that "[t]he porch has screen and has wall on the bottom, so it . . . opens to two rooms in my house."
When she arrived home from work on the afternoon of July 14, 2005, Ms. Nunenmacher was approached by policemen. She then observed that on the porch of her house, "[t]he screen on the door was cut above where the latch is." She further testified that there was a broken pane of glass on the porch. She said that "[t]he bottom door that goes into my bedroom has two french [sic] doors with glass at the bottom and one of the panes of glass was broken out." In addition to the broken glass on the porch, there was also broken glass in her bedroom. She confirmed that she had left tools in a cabinet on her porch. Finally, she testified that she had not given Mr. Martin permission to enter her porch or to break her window.
The final witness at the trial was Latoya Raymo, an investigator employed by the *13 office of the Orleans Parish District Attorney. She stated that she had retrieved from the NOPD "some tapes and a written confession" that were evidence in the instant case but that she was unable to obtain a screwdriver that had been collected as evidence. The screwdriver had been lost during Hurricane Katrina.

ERRORS PATENT
After a review of the record, we find no errors patent.

DISCUSSION
Mr. Martin has raised two assignments of error. He maintains that the evidence was insufficient to convict him and that the sentence he received was excessive.
Assignment of Error No. 1: The evidence was insufficient to support the verdict.
The Louisiana Supreme Court, in considering the issue of the sufficiency of evidence necessary to support a criminal conviction, has held that appellate courts in Louisiana are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See, e.g., State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18; State v. Mussall, 523 So.2d 1305, 1309 (La.1988).
In the Jackson case, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, creates the following standard of review for federal courts reviewing a state conviction:
[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
443 U.S. at 318-19, 99 S.Ct. 2781 at 2788-89 (footnote omitted) (citation omitted) (emphasis in original).
In the Mussall case, the Louisiana Supreme Court stated that "this court . . . recognized that . . . the Jackson holding also applies to state direct review of criminal convictions. . . ." 523 So.2d at 1309. The Supreme Court also recognized that the Louisiana Constitution has a due process clause "virtually identical to its Fourteenth Amendment model. La. Const., Art. I, § 2." Id.
The Supreme Court in Mussall held that a review of the record in a criminal case does not require the reviewing court to determine whether the reviewing court believes that the evidence at the trial established guilt beyond a reasonable doubt. The Supreme Court said:
[A] reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. . . . [T]he inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
523 So.2d at 1309-10 (footnotes omitted).
In State v. Williams, 05-0459 (La.App. 4 Cir. 1/18/06), 925 So.2d 567, this Court articulated the standard of review that is applicable to a claim that the evidence produced at a criminal trial was constitutionally insufficient to support a conviction. This Court stated:

*14 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt."
05-0459, p. 13, 925 So.2d at 575, quoting State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657. See also State v. Sykes, 04-0947, 04-1199, pp. 6-7 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 161.
Mr. Martin contends that he was wrongly convicted of attempted simple burglary, because the porch that he entered was not part of an inhabited dwelling. La. R.S. 14:62.2 provides in relevant part:
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60 [the article describing aggravated burglary].
La. R.S. 14:27 defines an attempted crime in pertinent part as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
. . . .
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
In order to convict a defendant of attempted simple burglary of an inhabited dwelling, the State must prove two elements beyond a reasonable doubt: (1) that the defendant had the specific intent or active desire to commit the crime of simple burglary of an inhabited dwelling, and (2) that he did one act in furtherance of his intent or desire to commit the crime of burglary of an inhabited dwelling. Specific intent is a state of mind that need not be proven as fact but may be inferred from circumstances and the actions of the defendant. See, e.g., State v. Smith, 06-0318, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 218, 221.
From the facts and circumstances in the instant case, the jury could infer that Mr. Martin had the specific intent to commit the crime of simple burglary of an inhabited dwelling. These facts and circumstances are as follows: (1) that Mr. Martin was found standing on the back porch of Ms. Nunenmacher's house without her permission; (2) that the screen next to the latch on the door which allowed entrance to the porch had been torn; (3) that one of the glass panes near the handle on the French door that led to Ms. Nunenmacher's bedroom was broken; and (4) that Mr. Martin was holding some sort of a tool in his hand when confronted by the police. These are specific facts from which a rational trier of fact could conclude that Mr. Martin had a specific intent or active desire to enter into Ms. Nunenmacher's house with the intention of committing a theft or some felony inside and that he did *15 at least one act in furtherance of his intention or desire to burglarize the house.
The only issue remaining is whether the porch was an "inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons." A screened-in porch can certainly be considered a structure which is used in whole or in part as a home or place of abode. In State v. Segue, 92-2426 (La.App. 4 Cir. 5/17/94), 637 So.2d 1173, this Court upheld a conviction for the unauthorized entry of an inhabited dwelling where the defendant entered the garage but never entered the dwelling area of the home. In Segue this Court stated that "if a structure is used as a home, a person may not enter any part of that structure without authorization." 92-2426, p. 4, 637 So.2d at 1176 (emphasis in original.) In State v. Harris, 470 So.2d 601 (La.App. 1 Cir.1985), the Louisiana First Circuit Court of Appeal found that a "carport and utility room were certainly part of the inhabited dwelling." 470 So.2d at 603.
Finally, in State v. Lawrence, 572 So.2d 276 (La.App. 1 Cir.1990), a case cited by Mr. Martin in support of his argument that the porch of the house on Audubon Street was not part of an inhabited dwelling, the First Circuit found that an enclosed back porch was, in fact, an "inhabited dwelling" for purposes of La. R.S. 14:62.3.[1] The porch in the Lawrence case was fully enclosed underneath the main roof line of the house. There were two entrances from the porch to the rest of the house, and the family who lived there spent a lot of time on the porch.
Mr. Martin argues that because there was no evidence presented at his trial to show that the porch was under the main roof line of the rest of the house, the porch was not part of an inhabited dwelling. We disagree. We do not find that the placement of the roof of the porch is dispositive of whether the porch was or was not a part of the house. In the instant case there was testimony that the porch was completely screened, that the outside door leading to the porch was locked, and that there were doors on the porch leading into a bedroom and into the kitchen of the house. Additionally, there was testimony from the owner of the house that she considered the porch to be a part of her home.
Based on the Lawrence, Harris, and Segue cases, we find that the screened-in porch of the Audubon Street house was a part of an inhabited dwelling. This assignment of error is without merit.
Assignment of Error No. 2: The Court imposed an excessive sentence.
Mr. Martin was sentenced to serve six years at hard labor for his conviction for attempted simple burglary of an inhabited dwelling, which is the maximum sentence that he could have received. He contends that his sentence is excessive.
The Louisiana Constitution expressly provides that "[n]o law shall subject any person to cruel, excessive, or unusual punishment." La. Const. art. 1, 20. Although the United States Constitution does not expressly prohibit excessive punishment, it does prohibit "cruel and unusual punishments." U.S. Const. amend. VIII.
In State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, the Louisiana Supreme Court set forth the standard to be used in evaluating a claim of an excessive sentence. The Court stated:

*16 Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
01-2574, pp. 6-7, 839 So.2d at 4 (citations omitted).
In State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977, the Louisiana Supreme Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Supreme Court further stated that the court is permitted to determine both whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender's sentence is within the prescribed statutory range. Id.
In State v. Bonanno, 384 So.2d 355 (La.1980), the Louisiana Supreme Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
[T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.
384 So.2d at 358 (citations omitted).
In State v. Soco, 441 So.2d 719 (La. 1983), the Supreme Court also stated that "[m]aximum sentences provided by the statutes are reserved for the `worst kind of offender.'" Id. at 720, citing State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). The Supreme Court further stated:
In order for there to be proper review of the sentence to determine its constitutionality, La. Const. art. 1, § 20, that is, whether the defendant is the worst kind of offender, an adequate record specifying the basis for the sentence must be made. This record is mandated by La. C.Cr.P. 894.1, which also provides the sentencing judge with guidelines to follow when passing sentence.
Id. The Supreme Court has also stated that "[i]f the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering." State v. Pike, 426 So.2d 1329, 1335 (La.1983).
In State v. Batiste, 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, this Court discussed compliance with La.C.Cr.P. art. 894.1.[2] This Court stated that "[a]n appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed." 06-0875, p. 18, 947 So.2d 810 at 820. This Court further *17 stated, quoting State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819, that "[t]he articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions." 06-0875, p. 18, 947 So.2d 810 at 820. Additionally, this Court stated that "[w]here the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1" Id.
At the sentencing hearing, in the instant case, the district court judge stated that Mr. Martin had an extensive juvenile record as noted in the report of the presentence investigation. The report showed that as a juvenile Mr. Martin had been arrested for being a runaway, the theft of goods under $100.00, and possession of stolen goods under $100.00. He had also been arrested on several for simple burglary of an inhabited dwelling. A number of other arrests resulted in convictions. He was convicted of the distribution of crack cocaine and sentenced to two and a half years in a juvenile facility. He was also convicted of two burglaries of an inhabited dwelling. In one of the burglary cases he was sentenced to three years in a juvenile facility, and in the other he was sentenced to a juvenile life sentence.
As an adult, Mr. Martin was arrested for domestic violence. At the time the presentence investigation report was made, he had been convicted not only in the instant case but also in another unrelated case of attempted burglary of an inhabited dwelling.[3]
The presentence investigation report stated that "[i]t is apparent that Mr. Martin failed to learn his lesson as a juvenile due to his numerous arrest [sic] as an adult." The report further stated that "[l]eniency is not recommended because of the serious nature of this offense, Mr. Martin's criminal history, his drug use, and his failure to take responsibility for his actions."
The district court judge said at the sentencing hearing that Mr. Martin's extensive juvenile record formed "a large part of the basis for the Court's sentence." We find that the district court appropriately followed the sentencing guidelines set forth in La.C.Cr.P. art. 894.1. Mr. Martin had an extensive juvenile record, and the trial court did not abuse its discretion in imposing the sentence that it did. This assignment of error has no merit.

DECREE
Mr. Martin's conviction and sentence are affirmed. The judgment of the district court is hereby affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 14:62.3 defines the crime of unauthorized entry of an inhabited dwelling as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
[2] Article 894.1 sets forth the sentencing guidelines for criminal defendants who have been convicted of a felony or misdemeanor.
[3] At the sentencing hearing in the instant case, the district court judge also sentenced Mr. Martin to six years in the unrelated case. The sentence was to run concurrently with the sentence in the instant case.