GARRETT, J.
hThe- defendant, Stanley Mitchell, was convicted of simple burglary of an inhabited'dwelling. He was adjudicated a fourth felony offender and sentenced to serve 35 years at hard labor without benefit of probation or suspension of sentence. He now appeals. ■ For. the following reasons, we affirm the conviction and sentence.
FACTS
On the evening of September 26, 2010, the Morehouse Parish Sheriffs Office received a pall regarding a trespasser riding a four-wheeler on the complainant’s property. Deputy Charles Whitaker was dispatched to the area. He did not see or hear a four-wheeler. The complainant *802 called a second time. On the way to the complainant’s residence, Deputy Whitaker encountered Mitchell riding a four-wheeler on the road. He activated his vehicle lights, but Mitchell did not stop immediately. When Mitchell eventually stopped, Deputy Whitaker informed him of his Miranda rights. Mitchell claimed he saw a small pickup drop the four-wheeler off at the corner of Up and Down and Dowd Roads. Mitchell asserted he then got on the four-wheeler and rode it.
Deputy Whitaker began looking for the vehicle identification number (“VIN”) of the four-wheeler. Under the seat, the deputy saw the name and address of James Barfield, and surmised that he was the owner of the vehicle. Deputy Whitaker called for backup. When backup arrived, Mitchell was detained.
Mr. Barfield was contacted. He lived in the vicinity and came to the location where Mitchell had been detained. Mr. Barfield identified the four-wheeler as his. Mr. Barfield’s daughter, Tina Eppinette, had recently moved a manufactured house near her father and had constructed a carport on the back of the dwelling. Mr. Barfield and Ms. Eppinette had been using the four-wheeler, with a utility trailer attached, to clean up the property. Mr. Barfield left the four-wheeler and trailer under his daughter’s carport, with the. key in the ignition.
Deputy Whitaker, Mr. Barfield, and Mitchell proceeded to Ms. Eppinette’s residence and found shoe prints under the carport which matched the Reebok tennis shoes worn by Mitchell. The utility trailer was still under the carport. Ms. Eppinette said that, earlier in the evening, she heard a sound under the carport which she thought was an animal. She did not hear the engine of the four-wheeler. Mitchell was arrested for felony theft and trespassing.
Mitchell was in his early 40s at the time of this offense. He lived in the same area as Mr. Barfield and Ms. Eppinette. While being transported to jail, Mitchell told Deputy Whitaker that, prior to being apprehended, he saw the deputy’s spotlight, but hid from the officer. He claimed that when apprehended, he was taking the four-wheeler back to Ms. Eppinette’s house. Mitchell also admitted that he went under the carport and took the four-wheeler.
On April 29, 2014, Mitchell was charged by bill of information with simple burglary of an inhabited dwelling.[1] On October 21, 2014, he was | ¡¡tried before a jury and convicted as charged by a unanimous verdict. A habitual offender bill of information was filed against Mitchell and on November 25, 2014, he was adjudicated a fourth felony habitual offender. On December 29, 2014, he was sentenced to serve 35 years at hard labor, without benefit of probation or suspension of sentence, with credit for time served.[2] Motions for *803 post verdict judgment of acquittal and reconsideration of sentence were denied. The defendant appealed.
INSUFFICIENCY OF THE EVIDENCE
Mitchell argues that the trial court erred in failing to grant his post verdict judgment of acquittal because there was insufficient proof that he entered an inhabited dwelling. He claims that the state failed to prove that the value of the four-wheeler exceeded $500, and therefore failed to prove that he intended to commit a felony. He also contends there was insufficient evidence to prove that he intended to permanently deprive Mr. Barfield of the four-wheeler, a necessary element to establish that he intended to commit theft. These arguments are without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,-149 (La.App.2d Cir.6/26/13), 117 So.3d 585, writ denied, 2013-1798 (La.2/14/14), 132 So.3d 410; State v. Stephens, 49,680 (La.App.2d Cir.5/20/15), 165 So.3d 1168. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Crossley, supra. The appellate court does not assess the credibility of witnesses or Rreweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. *804 When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier' of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299.
At the time of this offense, La. R.S. 14:62.2 provided, in pertinent part:
Simple burglary of an inhabited home is the unauthorized,entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60.[3]
| (¡To convict a defendant of simple burglary of an inhabited dwelling, the state is required to prove that he made an unauthorized entry into an inhabited dwelling with the intent to commit a felony or theft therein. A defendant’s intent to commit burglary of an inhabited dwelling may be inferred from circumstances surrounding the commission of the offense. State v. Jones, 38,579 (La.App.2d Cir.8/18/04), 880 So.2d 962, writ denied, 2005-0333 (La.5/13/05), 902 So.2d 1017; State v. Alsup, 42,636 (La.App.2d Cir.10/24/07), 968 So.2d 1152, writ denied, 2007-2252 (La.4/25/08), 978 So.2d 363.
Inhabited Dwelling
Mitchell argues there was insufficient proof that the carport of Ms. Eppi-nette’s house was part of the inhabited dwelling. He argues that the carport was a free-standing structure, was not attached to the house, and was not under the same roof fine. The evidence and the jurisprudence on this issue refute Mitchell’s argument.
In State v. Bryant, 34,244 (La.App.2d Cir.12/6/00), 775 So.2d 596, writ denied, 2001-0144 (La.11/21/01), 802 So.2d 627, the defendant broke into a stóreroom of a carport of a house. The occupant shouted at’the defendant, who ran away. Items from the storeroom were piled in the middle of the storeroom. The defendant was apprehended a short distance away. He was convicted of attempted simple burglary of an inhabited dwelling. On appeal, he argued that the stated failed to prove that the storage room was an “inhabited dwelling” under La. R.S. 14:62.2. This court found that:
Although the carport storage room had no direct entrance into the residence, it nevertheless formed part of the structure of the |7house; the room was under the same roof as the house. By definition, the storage room formed part of the structure of the house and the structure was used “in part” as a home or place of abode.
In State v. Harris, 470 So.2d 601 (La.App. 1st Cir.1985), writ denied, 477 So.2d 1123 (La.1985), the first circuit affirmed the defendant’s conviction for simple burglary of an inhabited dwelling, stating that the utility room and carport from which the defendant took the victim’s property was “certainly part of the inhabited dwelling.”
In State v. Ennis, 2011-0976 (La.App. 4th Cir.7/5/12), 97 So.3d 575, writ denied, 2012-1799 (La.3/1/13), 108 So.3d 788, the fourth circuit found that the state proved the defendant was guilty of attempted unauthorized entry of an inhabited dwelling *805 where he attempted to break a window of a shed located in the victim’s yard. The shed was located just outside the main residence and was within the fence that surrounded the residence. The fourth circuit found that the fact that the shed was not attached to the main residence did not make it any less a part of the victim’s home.
In State v. Martin, 2007-0791 (La.App. 4th Cir.10/17/07), 970 So.2d 9, the defendant, attacked his conviction for attempted simple burglary of an inhabited dwelling, arguing that the screened porch he entered was not part of the inhabited dwelling. He contended that, because there was no evidence the porch was under the main roof line of the rest of the house, it was not part of the inhabited dwelling. The fourth circuit disagreed, finding that the placement of the roof of the porch was not dispositive of whether the porch was part of the house. The porch had doors leading into the house and the |sowner considered the porch to be part of the house. The fourth circuit found that the porch was part of the inhabited dwelling.
Mitchell argues that the facts of this case are closer to those in State v. Williams, 98-651 (La.App. 5th Cir.2/10/99), 729 So.2d 14; State v. Freeman, 539 So.2d 739 (La.App. 3d Cir.1989), writ denied, 543 So.2d 17 (La.1989); and State v. Baggett, 292 So.2d 201 (La.1974), dealing with simple burglary or attempted simple burglary.[4] Mitchell’s argument is incorrect.
In Williams, the défendant broke into a car parked in the victim’s carport and stolé a check from the victim’s checkbook, which was located in the glove box of the car. The defendant was charged, with, simple burglary, not simple burglary of an inhabited dwelling. A jury found him guilty of attempted simple burglary. The • defendant appealed, claiming insufficiency of the evidence. The fifth circuit affirmed, finding that the jury believed the victim’s testimony and inferred from the circumstances that the defendant attempted an unauthorized entry into the victim’s vehicle with the intent to commit a theft therein.
In Freeman, the defendant was convicted of simple burglary after he took a bicycle and a lawnmower from the victim’s yard and carport. The defendant appealed, claiming the state had not' proved that the carport was a |astructure, an essential element of simple 'burglary. The third circuit found that the' carport was a structure and affirméd the conviction.
In Baggett, the defendants were convicted of simple burglary after stealing an outboard motor from the victim’s boat parked in a carport. The defendants argued that the carport was not a structure and walking -into a carport open to the street was not an unauthorized entry. The supreme court rejected that argument and affirmed the convictions.
In each of the cases cited by Mitchell, the defendants were charged with simple burglary, not simple burglary of an inhabited dwelling. There was no discussion in those cases of what constitutes an inhabited dwelling. In Williams, the defendant was convicted of burglarizing the victim’s vehicle, not the carport where it was parked. . In. Freeman, ■ the issue - was whether the carport was a structure within the meaning of the simple burglary stat *806 ute. The court in Freeman relied extensively on the reasoning in Baggett, in which the supreme court found that a carport was a structure. - Interestingly, Bag-gett was decided in 1974. The statute defining simple burglary of an inhabited dwelling, La. R.S. 14:62.2, had not yet been enacted. That statute was added by Acts 1978, No. 745, § 1. The cases cited by Mitchell are simply inapposite to the facts presented here.
Mitchell argues that the carport on the rear of Ms. Eppinette’s manufactured house was not an inhabited dwelling because the structure was separate from and not attached to the house. This argument is not supported by the facts in the record. The testimony and pictures admitted into evidence prove that the carport was built onto the rear of Ms. Eppinette’s [ ^manufactured house and was abutted to the structure. A strip of metal flashing kept water from running between the house and the carport and made the structures contiguous. Gutters and downspouts were attached to the posts supporting the carport in order to keep water out of the covered carport area. The carport covered the rear entrance to the house and the door to the house was in the carport. This carport was as much a part of the inhabited dwelling as the structures in Bryant, Harris, Ennis, and Martin. There was sufficient evidence upon which to find that Mitchell committed the unauthorized entry of Ms. Eppinette’s inhabited dwelling when he went into her carport.
Felony
La: R.S. 14:62.2 requires not only the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons, but also the intent to commit a felony or any theft therein. Mitchell argues that he was simply “joyriding” on the four-wheeler and, because the state failed to prove that the value of the vehicle was more than $500, it did not prove that he committed a felony.'
Unauthorized use of a movable is defined in La. R.S. 14:68 as:
A. Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.
B. Whoever commits the crime of unauthorized use of a movable having a value of five hundred dollars or less shall be Infined not more than five hundred dollars, imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having a value in excess of five hundred dollars shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than five years, or both.
The jury instructions included the definition of simple burglary of an inhabited dwelling and the jury was informed that it is a felony to intentionally take or use any movable valued at more than $500, which belongs to another, either without the other’s consent or by means of fraudulent conduct, practices, or representations, but without any intention of permanently depriving the other of the movable.
Unless it is shown that the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its weight being left to the jury. State v. McCray, 305 So.2d 438 (La.1974); State v. Dilworth, 358 So.2d 1254 *807 (La.1978); State v. James, 36,493 (La.App.2d Cir.12/11/02), 838 So.2d 1162; State v. Henry, 46,406 (La.App.2d Cir.8/10/11), 73 So.3d 958; State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 1999-1689 (La.11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000). The owner does not have to be an expert, nor need he be qualified as an expert at valuation. State v. James, supra.
Mr. Barfield testified that the four-wheeler was a 1985 model and was approximately 25 years old when it was taken. It was dependable and was still in use. He estimated it was worth $1,800 to $1,900 at the time it was taken. This testimony was not rebutted. There was no showing that Mr. Barfield lacked knowledge of the value of his four-wheeler or that his | ^valuation was inaccurate. The weight of his testimony was left to the jury and was obviously believed. Also, the state admitted into evidence pictures of the four-wheeler which allowed the jury to see the condition of the vehicle. Therefore, the state presented sufficient evidence to show that Mitchell committed the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony therein — unauthorized use of a movable valued at more than $500.
Theft
Mitchell also argues that the evidence is insufficient to support his conviction because the state failed to show that he committed the theft of the four-wheeler. He claims there was no proof that he intended to permanently deprive the owner of the vehicle, a necessary element of theft. As discussed above, the state had to prove that the defendant entered the inhabited dwelling with the intent to commit a felony or any theft therein.
La. R.S. 14:67 defines theft as:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
One element of simple burglary of an inhabited dwelling may be any theft, not one of a specific monetary value. The jury was instructed that theft is the taking of anything of value, and this term must be given the broadest possible construction, including any conceivable thing of the slightest value.
11sBecause the evidence proved that Mitchell committed a felony by taking the four-wheeler, valued at more than $500, out of Ms. Eppinette’s carport, all the necessary elements of simple burglary of an inhabited dwelling have been proven. It was not necessary for the state to establish he also committed a theft. However, the circumstances of this case demonstrate the intent to permanently deprive Mr. Barfield of his four-wheeler. Mitchell went into Ms. Eppinette’s carport, detached the four-wheeler from the utility trailer, and took it away from the house. Footprints matching Mitchell’s shoes were found in the dirt under the carport. Mitchell eventually admitted that he entered the carport and took the vehicle. He took it away from the residence and hid when he saw Deputy Whitaker’s spotlight. Although Mitchell claimed to law enforcement officers that he was taking the four-wheeler back to Ms. Eppinette’s house when he was apprehended, this statement was completely self-serving. The credibility of Mitchell’s self-serving statement to law en *808 forcement was called into question when he, at first, stated that he saw a pickup drop the four-wheeler off at the intersection of a road, but later admitted he took the vehicle from the carport. These circumstances provided a sufficient basis.for the jury to conclude that Mitchell intended to permanently deprive Mr. Barfield of the four-wheeler.
JURY INSTRUCTIONS '
Mitchell argues that the trial court erred by incorrectly instructing the jury on the law regarding carports and garages as they relate to inhabited dwellings. This argument is without merit.
| uLegal Principles
Under La. C. Cr. P. art, 802, the trial court is required to charge the jury as to the law applicable to the case. La. C. Cr. P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The pai’ty submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the .court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if . it is included in the-general charge or in another special charge to^be given.
The charge, however, must be supported by the evidence. State v. Telford, 384 So.2d 347 (La.1980); State v. Perkins, 2013-1917 (La.9/3/14), 149 So.3d 206; State v. Spears, 39,302 (La.App.2d Cir.9/27/06), 940 So.2d 135, writ denied, 2006-2704 (La.8/31/07), 962 So.2d 424. This is a corollary of the trial judge’s- basic obligation to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence, whether or not accepted by him as true. La. C. Cr. P. art. 802; State v. Simmons, 422 So.2d 138 (La.1982); State v. Miller, 338 So.2d 678 (La.1976); State v. Perkins, supra.
A jury charge must be considered as a whole, and particular phrases in a charge must be construed in the context of the entire charge. A conviction will not be reversed on. the ground of an erroneous charge unless the disputed portion, viewed with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993); State v. Wilson, 28,-403 (La.App.2d Cir.8/21/96), 679 So.2d 963.
Discussion
The state requested the following jury charge regarding the carport as part of the inhabited dwelling:
A garage, utility shed, and carport are part of an inhabited dwelling. Thus if a structure is used as a home, a person may not enter any part of that structure without authorization including a garage, utility shed, and carport.
The state cited State v. Ennis, supra, and State v. Bryant, supra, in support of this requested jury instruction. The trial court instead instructed the jury that, “Higher courts-have held that a carport or garage is a part of an inhabited dwelling.” Mitchell argues that the instruction given by the trial court failed to properly inform the jury that,- in order to find him guilty of simple burglary- of an inhabited dwelling, it must find that the structure, whether a carport or otherwise, was in fact part of an inhabited dwelling. Mitchell contends that *809 the instruction given to the jury could have, left a reasonable juror with the belief that, once it was determined that the structure was a carport or garage, the inquiry ended because carports or garages are automatically part of an inhabited dwelling.
In closing arguments, Mitchell’s attorney argued that the jury would be required to decide whether the area entered was part of the inhabited dwelling. He stated: >
The judge will tell you that our courts, have held that a garage or a carport is part of an inhabited dwelling. But what you have to decide is whether that structure that you’ve seen pictures of is a garage or carport. Call it what you will, but you have to 'decide what it is. The homeowner could call it a. living room if they 11fiwant, but -that doesn’t necessarily make it their living room. So, in determining whether that structure is a carport or garage, I would suggest there are several thing that you need to think about and look at. First of all the roof, is that roof part of the dwelling' itself? Or is it attached to the home? Does it have walls?
The record fails to show that the jury instruction regarding carports and garages was erroneous. While the jury charge requested by the state was an accurate reflection of the law, the instruction given by the trial court was not erroneous. Some cases in the jurisprudence have held that carports and garages are part of inhabited dwellings. The jury was made aware through the evidence adduced and the argument of counsel that it was" required to examine the facts of. this case to determine whether the carport in this case was part of the inhabited dwelling. As discussed above, the evidence and testimony in this case, along with the jurisprudence, demonstrate that the carport was a part of the inhabited dwelling. We reject Mitchell’s argument to the contrary.
CONCLUSION
For the reasons stated above, we affirm the conviction of the defendant, Stanley Mitchell, for simple burglary of an inhabited dwelling, his adjudication as a fourth felony offender, and his sentence to 35 years at hard labor, without benefit of probation or suspension of sentence, with credit for time served.
AFFIRMED.

. It appears from information in the record that Mitchell was incarcerated in Morehouse Parish on unrelated charges between the time of the commission of this offense and his charge here.

. We note that La. R.S. 14:62.2 requires the first year of the sentence for simple burglary of an inhabited dwelling to be served without benefit of parole. Although the multiple offender statute, La. R.S. 15:529.1, only calls for sentences to be served without benefit of probation or suspension of sentence, restrictions on parole eligibility imposed in multiple offender sentences are those called for in the referenced statute. State v. Hollingsworth, 42,317 (La.App.2d Cir.8/15/07), 962 So.2d 1183. Further, La. R.S. 15:301.1 provides in pertinent part:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension *803 of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
[[Image here]]
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or. combination of substantially similar provisions.
In pronouncing sentence in this case, the trial court stated that, "I cannot sentence you without parole according to the case law but it’s going to be without parole because of the nature of the law itself. At least for the first year under the burglary statute.” According to the applicable statutes and jurisprudence, we find that Mitchell's sentence of 35 years at hard labor, without benefit of probation or suspension of sentence, also included the provision that the first year be served without benefit of parole;

. This statute was amended by Acts 2014, No. 791, § 7. The only change was to specify that Article 60 is La. R.S. 14:60, the statute regarding aggravated burglary.

. In its present form, La. R.S. 14:62, dealing with simple burglary, provides in pertinent part:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.