WILLIAMS, C.J.
The defendant, James Burch, was charged by bill of information with attempting to disarm a peace officer, a violation of La. R.S. 14:27 and 14:34.6, and public intimidation, a violation of La. R.S. 14:122. After a jury trial, defendant was found guilty as charged. Defendant's motions for post-verdict judgment of acquittal and for new trial were denied. The trial court adjudicated defendant a third felony offender and sentenced him to serve 3 years at hard labor for the attempt to disarm conviction and 4 years for the public intimidation conviction. Defendant appeals his convictions. For the following reasons, we affirm.
FACTS
The record shows that on June 24, 2015, Deputy Trey Tull and Deputy Montrel Ferguson of the Union Parish Sheriff's Office were dispatched to a residence in Marion, Louisiana, in response to a disturbance call. At the residence, Teresa Burch told the deputies that defendant, her cousin, had used a rake to rip the screen door and poke her several times through the door. Deputies Tull and Ferguson went to defendant's residence and saw him sleeping through an open window. The deputies entered the dwelling and woke defendant, who cursed at them and seemed quite intoxicated. Based on Ms. Burch's allegations, defendant was placed under arrest, handcuffed and advised of his Miranda rights. Deputy Tull took defendant outside and told him several times to get into the back seat of the police car. According to the deputies, defendant did not comply, but continued cursing at them and then took a step away from the vehicle. At that point, Deputy Tull activated his Taser and pressed it on defendant's hip. Defendant then grabbed the Taser and as he turned away Deputy Tull pushed him into the back seat and pulled the Taser from defendant's grasp. Deputy Tull later stated that during the ride to the Union Parish Detention Center, defendant threatened to "kill him and have his job." Defendant was charged with attempting to disarm a peace officer and public intimidation.
After a trial, the jury found defendant guilty as charged. Defendant's motions for post-verdict judgment of acquittal and for new trial were denied. The trial court adjudicated defendant a third felony offender and sentenced him to serve 3 years at hard *1193 labor for the attempt to disarm conviction and 4 years for the public intimidation conviction, with the sentences to run concurrently. This appeal followed.
DISCUSSION
The defendant contends the evidence is insufficient to support the convictions for attempting to disarm a police officer and public intimidation. Defendant argues that he was trying to protect himself, not attempting to take the Taser from the deputy, and that his comments in the patrol car were not intended to influence the deputy in doing his job.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78. This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Mitchell , 50,188 (La. App. 2 Cir. 11/18/15), 181 So.3d 800, writ denied , 2015-2356 (La. 1/9/17), 214 So.3d 863. A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Mitchell, supra ; State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 2009-0725 (La. 12/11/09), 23 So.3d 913, cert. denied , 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Crossley , 48,149 (La. App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied , 2013-1798 (La. 2/14/14), 132 So.3d 410 ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 2009-0372 (La. 11/6/09), 21 So.3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Johnson , 47,913 (La. App. 2 Cir. 4/10/13), 113 So.3d 1209.
Disarming of a peace officer is committed when an offender, through the use of force or threat of force, takes possession of any law enforcement equipment from the person of an officer without his consent when the offender has reasonable grounds to believe the victim is a peace officer. La. R.S. 14:34.6. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishment of his object is guilty of an attempt to commit the offense intended. La. R.S. 14:27. Public intimidation is the use of force or threats upon a public officer or employee with the intent to influence his conduct in relation to his position. La. R.S. 14:122.
The attempt to disarm a peace officer and the offense of public intimidation both require specific criminal intent, which is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his *1194 act or failure to act. La. R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Harris , 2000-3459 (La. 2/26/02), 812 So.2d 612.
Public intimidation involves the use of force or threats upon the officer with the specific intent to influence the officer's conduct in performing his duties. State v. Mead , 36,131 (La. App. 2 Cir. 8/14/02), 823 So.2d 1045, writ denied , 2002-2384 (La. 3/14/03), 839 So.2d 34. In Mead, supra , while being transported to the police station after his arrest, defendant stated that he should have shot the officer and that he would do everything he could to get the officer's badge. The officer testified he thought the threats were made to influence his actions in doing his job. This court affirmed the public intimidation conviction, finding that the threats made by defendant before he actually arrived at the police station indicated his specific intent to influence the officer's conduct by persuading him not to complete the arrest or not to respond to any other calls from defendant's residence.
In the present case, Deputy Tull testified at trial as follows: when the deputies approached defendant's house they could see him sleeping through an open window; the officers believed that defendant had committed a felony, so they entered the house and attempted to wake him; when defendant awoke he started cursing at them and seemed impaired; he handcuffed defendant, advised him of his Miranda rights and escorted him to the patrol car; at least three times he told defendant to "get in the back of the car," but defendant refused to get in and then took a step away from the car; due to defendant's non-compliance, Tull removed his Taser from its holster and executed a "drive stun," which involved pressing the Taser against defendant's hip or thigh area; after the Taser was activated defendant grabbed the weapon with a solid grip like he was trying to take it away from the deputy and turned toward the vehicle; Dep. Tull then pushed defendant into the backseat and was able to forcibly pull the Taser from his grasp; while transporting defendant to the detention center, he said he "would kill me and he would have my job"; this statement seemed to be a threat made by defendant with the intent to prevent the deputy from performing his job of arresting and booking defendant.
Defendant took the stand and testified as follows: he conceded that he had previously been arrested; on the night of this offense, he had gone to Ms. Burch's house and she came to the door shaking a hickory stick at him; in response he picked up a rake and "punched it through the screen once" to keep her away from him; he then walked home and went to bed; shortly thereafter, he was awakened "harshly" by the deputies; they immediately put handcuffs on him and would not let him put on a shirt or shoes; one deputy said he wouldn't need a shirt because he was going to jail; defendant then became belligerent and started calling the deputy a "cracker" as they walked outside; at the patrol car, he asked to go get his money that was on the dresser, but the deputy refused and told him to get into the car; when the deputy shocked him with the Taser, defendant said "Man, you ain't got to be Tasing me" and tried to swipe the weapon away; he admitted "maybe I grabbed his Taser," but denied deliberately attempting to disarm the deputy; while in the patrol car he did threaten to kill Deputy Tull because he was upset and angry about being shocked with the Taser, but his comments were not intended to influence the deputy in doing his job.
The trial testimony of the deputies established that defendant refused to comply *1195 with Deputy Tull's repeated instructions to get into the car. When defendant began to step away from the car, Deputy Tull used his Taser to inflict a drive stun on defendant's person. Both officers testified that defendant then turned and grabbed the Taser. Deputy Tull testified that defendant had a solid grip on the Taser and pulled as if he wanted to take the weapon away from him. Deputy Tull was required to push defendant into the car and exert pressure with his free hand on defendant's back in order to pull the Taser from his grasp. Deputy Ferguson corroborated this testimony and stated that he heard Deputy Tull tell defendant to let go of the Taser. The jury chose to credit the officers' testimony over the self-serving and inconsistent testimony of defendant. Such credibility determinations will not be disturbed on appeal. The evidence presented was sufficient to support the conviction of attempting to disarm a peace officer.
Additionally, defendant admitted that while in the patrol car he had threatened to kill Officer Tull or have his job. Deputy Tull testified that he believed the statements were threats made by defendant in an attempt to prevent the deputy from bringing him to jail. While defendant testified that he had no such intent, the jury was reasonable in finding that the defendant made the threats with the intent to influence the deputy in performing his job. The evidence presented was sufficient to support the conviction of public intimidation. Thus, this assignment of error lacks merit.
Defendant contends the trial court erred in failing to rule on defendant's motion for post-verdict judgment of acquittal. Such a motion must be disposed of before sentencing. La. C.Cr.P. art. 821. Contrary to defendant's contention, the record shows that at a hearing in June 2017, the trial court denied defendant's motion for post-verdict judgment of acquittal in open court. In addition, the minute entry for June 21, 2017, correctly notes that the motion for post-verdict judgment of acquittal was denied. This assignment of error lacks merit.
Pro se Brief
In his pro se appellate brief, defendant does not specify any particular assignments of error, but vaguely alleges that the testimony of the two deputies was not sufficient evidence to support his convictions and that his trial attorney was ineffective. As stated in the above discussion, we have determined that the evidence presented at trial is sufficient to support the convictions.
In addition, to the extent that defendant is asserting that his trial counsel was ineffective, we note that such a claim is generally more properly raised in an application for post-conviction relief ("PCR") in the trial court, where there is an opportunity for an evidentiary hearing. State v. Ellis , 42,520 (La. App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied , 2007-2190 (La. 4/4/08), 978 So.2d 325. Based upon this record, defendant's claim of ineffective assistance would more properly be raised in a PCR application. Thus, we decline to address the issue at this time.
Defendant also asserts that a member of his family was allowed to remain in the courtroom during trial despite his objection that the person had spoken to a prospective juror. Defendant does not provide any details regarding the identity of the family member or the prospective juror. The juror voir dire was not included as part of the trial transcript in the appellate record, which does not contain such an objection by defendant. However, the record shows that after the jury was sworn the trial court was advised that a juror had spoken with members of defendant's family.
*1196 After questioning the jurors, the court excluded the juror who had spoken with defendant's family members and an alternate took his place on the jury. Based upon this record, there is no showing of any error by the court in presiding over the trial proceedings.
Error Patent
In reviewing the record for error patent, we note that the trial court imposed sentence immediately after denying defendant's motion for new trial. La. C.Cr.P. art. 873 provides that if a motion for new trial is filed, sentence shall not be imposed until 24 hours after the motion is denied, unless defendant expressly waives the delay. The record shows that the trial court failed to observe the sentencing delays under Article 873 and there was no express waiver of those delays by defendant. However, defendant did not object to the trial court's failure to observe the delay and there was no showing of prejudice. Thus, the trial court's failure to observe the statute was harmless error. See State v. Lindsey , 50,324 (La. App. 2 Cir. 2/24/16), 189 So.3d 1104.
CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.